# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Vesey*, 2011 IL App (3d) 090570

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JANET VESEY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-09-0570 |
| Filed | September 27, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of a controlled substance was reversed and the cause was remanded for a new trial where the trial court failed to comply with Supreme Court Rule 431(b) when the court did not ask certain members of the jury about some of the *Zehr* principles, and although defendant failed to preserve her objection to the procedure, the "conventional" plain error analysis was applied, and based on the closely balanced evidence, the clear and obvious error was found to have prejudiced defendant. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 08-CF-1265; the Hon. Thomas C. Berglund, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, and Ron D. Dolak, of Konicek & Dillon, P.C., of Geneva, for appellant.

Jeff Terronez, State's Attorney, of Rock Island (Terry A. Mertel and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial, the defendant, Janet Vesey, was convicted of unlawful possession of a controlled substance. 720 ILCS 570/402(c) (West 2008). She appeals her conviction and argues that she is entitled to a new trial because the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). We reverse and remand.

¶ 2                                              FACTS
¶ 3                          I. Discovery of the Controlled Substance
¶ 4     On December 23, 2008, the defendant and her sister had spent the day finishing their Christmas shopping. They had also visited Walmart so the defendant could try on bras and girdles for an event that the defendant had to attend the following January. During the early morning hours of December 24, they were pulled over by Officer Ibrahim Ramirez. Ramirez pulled the defendant over because the vehicle's license plates were suspended. During the traffic stop, the defendant admitted to the officer that her driver's license was suspended. She was arrested, and the officer performed a limited pat-down on her, which mainly consisted of checking her pockets for weapons.

¶ 5     The defendant was taken to the Rock Island County jail, and she was turned over to correctional officer Michelle Haun. Haun took the defendant to a small room so that she could have some privacy while changing into jail-issued clothing. Haun testified that she looked in the room before taking the defendant in. As the defendant was removing her bra, Haun heard a noise and the defendant say "[t]hat's not mine, [t]hat's not mine!" Haun described the noise as a "light little thud." Looking down, she saw a bag on the floor that contained a white substance and a straw.

¶ 6     According to the defendant, she was strip searched when she was taken into the small room. After she had changed into the jumpsuit, she bent over to put on flip-flops and saw the

-2-

bag on the floor. She told Haun about the bag because she did not want to be blamed for it later. Haun said that it must have fallen from the defendant's bra and gave the bag to another officer. The substance tested positive for cocaine.

¶ 7                                                    II. *Voir Dire*

¶ 8        The trial of this matter took place on April 23, 2009. The trial court conducted *voir dire* by calling panels of four prospective jurors at a time. During the first panel, the court asked:

> "Do each of you folks understand that the defendant is presumed innocent at this point and has a right to have a trial?
>
> * * *
>
> And the presumption of innocence, folks, remains with the defendant throughout the entire case, and it's not overcome unless the State is able to show her guilt beyond a reasonable doubt. Do each of you understand that?
>
> * * *
>
> And do each of you understand that the defendant is presumed innocent and has a right to rely on that presumption of innocence and has a right to put on no evidence whatsoever if she wants to. Do each of you understand that?
>
> * * *
>
> And if the defendant would choose not to put on any evidence, that fact could not be considered by you in judging her guilt or innocence. Do each of you understand that?
>
> * * *
>
> Do any of you have any quarrels or disagreements with any of these propositions of law?"

¶ 9        The State and the defendant accepted all four individuals on the jury. The trial court then called the second panel and asked:

> "And do all of you understand the burden of proof issues that we have been talking about? In other words, at this point the defendant is presumed innocent of the charge and she is entitled to rely on that presumption of innocence throughout the entire case. Do each of you understand that?
>
> * * *
>
> And do each of you understand that presumption of innocence is not overcome unless the State is able to prove her guilt beyond a reasonable doubt? Do each of you understand that?"

The defense attorney also inquired of the second panel:

> "Does anyone feel as though myself or Ms. Vesey has anything that they have to prove here today? Anyone? Raise your hand if you think that we do?
>
> * * *
>
> If I were to sit here, and obviously I'm not going to, I've obviously expressed that I'm going to be calling some witnesses, and stare at the ceiling tile and not call any witnesses, would you think that I have done something wrong?

Does anybody feel as though–my question here is to make sure you understand that my client as she sits here today is an innocent person. She does not have to prove anything. That the entire burden of proof remains on the State. Does anybody have a problem with that?"

¶ 10    Three of the four panel members were accepted onto the jury. The next prospective juror was questioned individually by the trial court and the attorneys, and he was accepted onto the jury. The trial court asked him if he understood the principles of reasonable doubt and the presumption of innocence. This juror was not asked if he accepted those principles of law.

¶ 11    The last four jurors that eventually made it onto the jury were all asked if they understood the presumption of innocence and the fact that the State had to prove the defendant guilty beyond a reasonable doubt. Those jurors were also asked if they had any quarrels with those principles of law.

¶ 12    After the trial, all of the jurors were instructed on the presumption of innocence and the burden of proof. The jury found the defendant guilty, and she was sentenced to 24 months of probation. She appealed.

¶ 13                                ANALYSIS

¶ 14    The defendant argues that she was denied the right to a fair trial because the trial court failed to strictly comply with Rule 431(b). Ill. S. Ct. R. 431(b) (eff. May 1, 2007). The defendant admits that she did not object to this error during trial, or raise the issue in a posttrial motion, and that failure to do so ordinarily results in forfeiture of the issue. *People v. Schaefer*, 398 Ill. App. 3d 963 (2010). Therefore, in order for the defendant to succeed in her argument, the trial court must have committed plain error. *People v. Herron*, 215 Ill. 2d 167 (2005). Under the plain error rule, we will remand for a new trial only if: (1) the evidence is closely balanced; or (2) the error was so serious it denied the defendant a fair trial. *Herron*, 215 Ill. 2d 167.

¶ 15    Rule 431(b) provides:

"The court *shall* ask each potential juror, individually or in a group, whether that juror *understands* and *accepts* the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." (Emphases added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 16    In this case, error occurred because certain members of the jury were not asked about some of these principles. No member of the jury was asked whether he or she understood and accepted that the defendant's refusal to testify could not be held against her. In addition, 4 of the 12 jurors were not asked by the trial court if they accepted the presumption of

innocence or the State's burden of proof.[1] The trial court's failure to properly question jurors under Rule 431(b) constitutes noncompliance with the rule. *People v. Thompson*, 238 Ill. 2d 598 (2010).

¶ 17    The issue then becomes whether the error warrants a new trial. The defendant first argues that she is entitled to a new trial because the evidence in this case is closely balanced. The defendant points out that she presented four witnesses at trial while the State only offered two. In addition, the trial largely came down to Haun's word against the defendant's. This suggests that the evidence was closely balanced because there was no corroborating evidence of guilt and defendant's verdict was decided by who the jury found more credible. See *People v. Naylor*, 229 Ill. 2d 584, 608 (2008) (holding that evidence was closely balanced where "[t]he evidence boiled down to the testimony of *** two police officers against that of the defendant").

¶ 18    In *Herron*, the court stated that where there is error in a closely balanced case it is important to err on the side of fairness so as to not convict an innocent person. *Herron*, 215 Ill. 2d 167. Once the defendant proves that there was an error and that the evidence was closely balanced, the error is considered prejudicial. *Id.* The *Herron* court explained:

> "If the defendant carries the burden of persuasion and convinces a reviewing court that there was error and that the evidence was closely balanced, the case is not cloaked with a presumption of prejudice. The error is actually prejudicial, not presumptively prejudicial." *Herron*, 215 Ill. 2d at 193.

See also *People v. Piatkowski*, 225 Ill. 2d 551, 564-65, 568, 571-72 (2007).

¶ 19    In *People v. White*, 2011 IL 109689, our supreme court noted that a defendant may obtain reversal of his conviction under the closely-balanced-evidence prong of plain error only if he can show that he was prejudiced by the alleged error. *White*, 2011 IL 109689, ¶ 133. However, in our view, this does not alter the rule established in *Herron, i.e.*, that a defendant may show prejudice (and therefore obtain reversal of his conviction) merely by showing that the trial court committed an error and that the evidence was closely balanced. In *White*, the supreme court held that the evidence was *not closely balanced*. *White*, 2011 IL 109689, ¶¶ 134-42. Thus, under the rule set forth in *Herron*, the *White* court reasonably concluded that the defendant had failed to prove that the error alleged by the defendant was prejudicial. *White* does not upend the established principle that if a defendant shows that there was error and that the evidence was closely balanced (as the defendant has done in this case), the error is both prejudicial and reversible and no further showing of actual prejudice is required. Thus, although *White* states that a defendant alleging plain error under the closely-balanced-evidence prong must "show that he was prejudiced" (*White*, 2011 IL 109689, ¶ 133), a defendant may show such prejudice merely by showing that an error

---

[1]Although three of those four were asked by the defendant's attorney if they "ha[d] a problem" with those principles, this does not change the fact that the trial court failed to provide each juror an opportunity to respond to specific questions concerning the principles set forth in Rule 431(b). See *People v. Hill*, 408 Ill. App. 3d 23, 28 (2011); *People v. Stewart*, 406 Ill. App. 3d 518, 534-35 (2010). Moreover, the fourth juror was not asked by either the trial court or the defense attorney if he accepted the principles.

occurred and that the evidence was closely balanced. *Herron*, 215 2d at 193.

¶ 20    However, although *White*'s holding is consistent with the traditional plain error analysis applied in *Herron*, certain statements in *White* appear to be in tension with that analysis. For example, *White* compares the showing of prejudice required in plain error cases to the showing of prejudice required in cases involving claims of ineffective assistance of counsel based on evidentiary error. *White*, 2011 IL 109689, ¶ 133. In the latter cases, a defendant must show that there was a " 'reasonable probability' of a different result had the evidence in question been excluded." *Id.* ¶ 133 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Applying this "results-oriented" analysis (*id.* ¶ 134), the supreme court noted that the alleged error at issue in *White* was not prejudicial because it did not "figure prominently in the [trial] court's finding of guilt." *Id.* ¶ 140; see also *id.* ¶¶ 133, 135. These statements arguably conflict with *Herron*'s rulings that a defendant alleging plain error "need not prove that the error *** actually misled" the fact finder and that a defendant may prove prejudice merely by showing "that there was error and that the evidence was closely balanced." *Herron*, 215 Ill. 2d at 193. However, we conclude that these statements in *White* are *dicta* which are unnecessary to the court's holding. As noted above, *White* held that the defendant could not show prejudice because the evidence was not closely balanced. Because *White*'s holding is consistent with the traditional plain error analysis announced in *Herron*, we do not read *White* as changing that analysis.[2]

¶ 21    Moreover, although *White* apparently modified another aspect of the traditional plain error analysis, this modification does not effect our analysis or our conclusion in this case. *White* acknowledged that, "as a matter of convention," the supreme court "has typically undertaken plain-error review by first determining whether error occurred at all." *White*, 2011 IL 109689, ¶ 144. Typically, only after the court has first determined that an error occurred will the court proceed to determine whether the evidence in the case was closely balanced, rendering the error reversible. See, *e.g.*, *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010). However, in *White*, the court broke with convention and determined that the evidence was not closely balanced without first determining whether any error had occurred. Because the court found that the evidence was not closely balanced, it affirmed the defendant's conviction on that basis without determining whether the trial court had erred.[3] The court applied this unconventional analysis for three reasons. First, the error alleged by the defendant was a constitutional error, and the established doctrine of constitutional avoidance requires courts to avoid the adjudication of constitutional issues if the case can

---

[2]If the supreme court intended to overrule the traditional plain error analysis announced in *Herron*, we would expect it to acknowledge that it was doing so, particularly considering that it cited *Herron* when defining the scope of the prejudice requirement in plain error cases. *White*, 2011 IL 109689, ¶ 133. We should not assume that the supreme court has overruled a well-established prior decision *sub silentio* if we can avoid making that assumption.

[3]The court was able to reach this result because the only basis for the defendant's claim of plain error was his claim that the evidence was closely balanced. The defendant did not argue for plain error review under the second prong of the plain error doctrine. *White*, 2011 IL 109689, ¶¶ 131, 144.

be decided on other grounds. *White*, 2011 IL 109689, ¶¶ 144-48. Second, the record before the trial court was inadequately developed to permit a fair review of the defendant's claim of error because the State did not have an opportunity to adduce all available evidence bearing on the defendant's constitutional contentions. *Id.* ¶¶ 143, 148. Third, because the evidence was not closely balanced, any error committed by the trial court would not have prejudiced the defendant. Thus, it was unnecessary to determine whether any error had occurred. *Id.* ¶¶ 144-48.

¶ 22 None of these considerations applies here. The error at issue in this case is the trial court's failure to comply with Illinois Supreme Court Rule 431(b), not any alleged constitutional error. Moreover, the record of the trial court's error is sufficiently developed for us to review it. In addition, because the evidence in this case is closely balanced, any error committed by the trial court would be automatically prejudicial. Thus, unlike the facts presented in *White*, the facts in this case require us to determine whether an error occurred.

¶ 23 For all these reasons, we conclude that the "conventional" plain error analysis is appropriate in this case. Having applied that analysis, we hold that the trial court erred by failing to comply with the requirements of Rule 431(b). Although the error in this case was minimal, there is no *de minimis* exception to the first prong of the plain error test. *People v. Belknap*, 396 Ill. App. 3d 183 (2009). Moreover, we find that the evidence in this case was closely balanced. Accordingly, the trial court's clear and obvious error prejudiced the defendant. Therefore, we do not need to reach the second prong of the plain error test, and we reverse and remand for a new trial.

¶ 24                                                    CONCLUSION

¶ 25 For the foregoing reasons, the judgment of the circuit court of Rock Island is reversed, and the cause is remanded for further proceedings.

¶ 26 Reversed and remanded.